IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANTONIO T MILLER,

      Plaintiff,

v.                                             CASE NO. 1:15-cv-268-WTH-GRJ

CAROLYN W. COLVIN
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") terminating his

disability benefits due to medical improvement.  The Commissioner has

answered, and both parties have filed briefs outlining their respective

positions.  ECF Nos. 9, 14, 16.  For the reasons discussed below, the

undersigned recommends that the Commissioner's decision be

**AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff was initially determined to be disabled in 1989, at the age of

four, due to cognitive and seizure disorders as a consequence of head

trauma sustained in a motor vehicle accident as an infant. R. 48.  Plaintiff

also received child disability insurance benefits based on his father's

record.  R. 49.  Plaintiff's benefits were continued after he reached age 18. R. 54.

In May 2010, the agency conducted a disability review and determined that Plaintiff was no longer disabled as of May 1, 2010, due to medical improvement.  R. 55, 57-58, 60-62.  The cessation of benefits was affirmed on reconsideration and Plaintiff requested a hearing before an ALJ.  R. 89-90.  The ALJ issued an unfavorable decision, the Appeals Council denied review, and Plaintiff appealed to this Court.  Upon the Commissioner's motion, the case was remanded for further consideration. R. 379-82, 438.

Following a hearing on remand, the ALJ again issued an unfavorable decision finding that Plaintiff's disability ended on May 1, 2010, due to medical improvement.  R. 298-313 (amended unfavorable decision). This appeal followed.  The sole issue presented is whether substantial evidence supports the Commissioner's decision that Plaintiff's cognitive disorder was no longer disabling as of May 1, 2010.  ECF No. 14.

## II.  STANDARD OF REVIEW

A claimant bears the burden of providing evidence that he is disabled

within the meaning of the Social Security Act.[1]  In a termination of benefits

case, the issue is whether substantial evidence shows that Plaintiff's

impairments medically improved to the point that he is able to perform

substantial gainful activity.[2]  Medical improvement is defined as any

decrease in the medical severity of Plaintiff's impairments based on

changes in the symptoms, signs, and/or laboratory findings associated with

Plaintiff's impairments.[3]  The standard for medical improvement and the

required sequential evaluation process are outlined in the regulations at 20

C.F.R. 404.1594(b)(5).[4]  Generally, medical improvement relates to a

---

[1] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001.)

[2] See 42 U.S.C. 423(f); 20 C.F.R. 404.1594(a).

[3] 20 C.F.R. 404.1594(b)(1), (C)(1); see also, 20 C.F.R. 404.1528

[4] The steps in the process are:

1.  Does the claimant have an impairment which meets or equals the
severity of an impairment listed in Appendix 1?
2.  If not, has there been medical improvement as shown by a decrease in
severity?  If so, see step 3, otherwise, go to step 4.
3.  If there has been medical improvement, is it related to the claimant's
ability to work?
4. If there has not been medical improvement or if the medical improvement
is not related to the ability to do work, do any exception(s) to the medical
improvement standard apply?
5.  If there has been medical improvement related to the ability to work, or if
one of the exceptions applies, does the claimant have a severe impairment
or combination of impairments?
6.  If the claimant has a severe impairment, does the claimant have the RFC
to perform his/her past relevant work?

claimant's ability to work if the claimant has had a decrease in the severity of his impairments and an increase in his RFC.

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[5] Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[6]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court must view the evidence as a whole, taking into account

---

7.  If not, does the claimant have the RFC and vocational factors to perform other work?

[5] *See* 42 U.S.C. § 405(g) (2000).

[6] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

evidence favorable as well as unfavorable to the decision.[8]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[9]

## III.  SUMMARY OF THE RECORD

### A. Findings of the ALJ

The ALJ determined that the "comparison point decision" (CPD) was the July 2003 decision finding that Plaintiff continued to be disabled at the age 18 redetermination.  According to the ALJ, at that time it was determined that Plaintiff had the impairments of cognitive disorder with memory deficit; GERD; achalasia; hyperlipidemia, asthma; borderline intellectual functioning; seizure disorder; hypertension; and obesity.  As of May 1, 2010, Plaintiff had not engaged in substantial gainful activity and had not developed any additional impairments.  The ALJ concluded that

---

[8] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[9] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

because Plaintiff's asthma was not mentioned in any records from May 2010 forward, it was not a medically determinable impairment.

The ALJ found that  Plaintiff does not have an impairment or combination of impairments that meets or equals the listings.  Specifically, the ALJ found that Plaintiff did not meet the criteria of listings 12.02 and 12.05.  As to listing 12.05, Plaintiff did not have a valid IQ score of 70 or less.  Regarding Listing 12.02, the ALJ considered the "paragraph B" criteria and found that Plaintiff has mild to moderate limitations in activities of daily living, mild to moderate difficulties in social functioning, moderate to marked difficulties in concentration, persistence, or pace, and no episodes of decompensation.  The ALJ found that the "paragraph C" criteria were not satisfied.  The ALJ determined that the medical evidence supported a finding that there was a decrease in severity of Plaintiff's impairments in that his seizures were controlled with the compliant use of medication and the only seizure activity in the record was during a time when Plaintiff admitted noncompliance.  Further, with respect to cognitive abilities the ALJ observed that Plaintiff testified he attended one year of community college during the relevant period, evidencing that Plaintiff had developed adaptive functioning and was able to function at a greater level

than IQ and memory testing suggested.

The ALJ determined that Plaintiff has the RFC to perform medium work with the following limitations: avoid ladders and unprotected heights; avoid proximity to heavy moving machinery; low stress work environment with no production line; simple tasks; and only occasional bending, crouching, kneeling, stooping, squatting, and crawling.  The ALJ found that Plaintiff's medical improvement was related to his ability to work because it resulted in an increase in his RFC.[10]

Relying on the testimony of a VE, the ALJ found that a person with Plaintiff's age, education, work experience, and RFC, would be able to perform unskilled jobs at the medium exertional level that exist in substantial numbers in the national economy, such as: Cook Helper, Marker, and Cafeteria Attendant.  The ALJ therefore found that Plaintiff was not disabled.  R. 301-13.

---

[10] The July 2003 continuation of benefits reflects that Plaintiff had the primary diagnosis of "organic mental disorder" and the secondary diagnosis of "seizure disorder."  R. 54.  The physical RFC assessment noted primary diagnoses of seizures, obesity, and asthma.  R. 190.  The mental RFC assessment states that "Claimant could not complete detailed tasks but could complete simple tasks.  Even on simple tasks, the claimant would require greater than average levels of supervision to maintain adequate concentration, persistence, and pace.  Contact with coworkers and the general public should be casual and infrequent.  Supervision should be direct and nonconfrontational. Changes in the environment should be infrequent and gradually introduced."  R. 201.

## B. Medical Evidence

Plaintiff's appeal focuses on the ALJ's evaluation of the medical evidence pertaining to his cognitive impairment.  Specifically, Plaintiff points to the consultative psychological examinations perform by Linda Abeles, Ph.D., on April 20, 2015, and April 27, 2015, as evidence that Plaintiff's cognitive disorder did not substantially improve as of May 1, 2010.  ECF No. 14 at 11-12.

Dr. Abeles' report (R. 744-50) may be summarized as follows. Plaintiff was 30 years old at the time of her examination.  He was referred for a memory assessment and was administered the WAIS-4th Edition and the Wechsler Memory Scale-4th Edition.  Dr. Abeles also reviewed Plaintiff's medical and educational records as well as a psychological evaluation from 2003.  In 1995, an intellectual evaluation reflected that Plaintiff had a Verbal IQ score of 93, a Performance IQ score of 66, and a Full Scale IQ score of 88.  His 1998 achievement test results were consistent with fifth to sixth grade academic achievement.  Plaintiff received special educational services relating to an emotional handicap. Plaintiff reported that he completed the twelfth grade at Williston High School, but did not graduate.  Plaintiff was able to perform household

chores including doing the laundry, washing dishes, and raking the yard.

Plaintiff did not exhibit obvious impairments in vision, hearing, or speech abilities, although Dr. Abeles noted that his speech was slowed. He was outwardly cooperative.  Plaintiff obtained a Full Scale Composite Score of 71 on the WAIS-4th Edition (3rd percentile), consistent with cognitive functioning in the Borderline Range of Intelligence.  His subtest scores were 72 Verbal Comprehension (3rd percentile), 84 Perceptual Reasoning (14th percentile), 83 Working Memory (13th percentile), 62 Processing Speed (1st percentile).  Dr. Abeles found that Plaintiff's arithmetic and verbal reasoning abilities were areas of relative strengths, while weaknesses were evident in his comprehension abilities, visual-spatial-motor functioning, memory for numbers, and processing speed. She concluded that the results were not dissimilar from the 1995 assessment.

On the Wechsler Memory Scale-4th Edition, Plaintiff's visual working memory abilities were within the lower part of the average range, but otherwise his memory abilities were significantly decreased.  Her diagnostic impressions were Cognitive Disorder NOS; Borderline Intellectual Functioning; obesity, hypertension, high cholesterol;

unemployment; GAF 60.

Dr. Abeles summarized that Plaintiff was functioning in the borderline range of intelligence, with significantly decreased memory abilities. She stated that his "current level of functioning would probably preclude him from performing anything but manual labor positions," and that "[g]iven his arithmetic abilities, he would appear competent to manage any monies to which he may be entitled. She concluded that "[p]rognosis for future success in the workplace is judged to be fair and in this regard, it is recommended that the claimant be referred for job training." R. 747.

With respect to the secondary diagnosis of seizure disorder underlying the 2003 CPD, in January 2011 Plaintiff saw consultative examiner Dr. Robert A. Greenberg, M.D. Dr. Greenberg noted Plaintiff's report of ongoing seizures despite medication. Dr. Greenberg did not assess work-related limitations. R. 269-70.

In October 2013 Plaintiff presented at Shands-UF with complaints of a seizure two days prior to his visit. The medical records for this visit reflect that Plaintiff stated that it was difficult to follow the dosing regimen for his seizure medication when he was at work because he takes the medication with food. He also stated that difficulties with Social Security

made it challenging to acquire his medication.  Plaintiff was counseled on

the importance of adhering to his medication.  R. 705-09.

## C.  Hearing Testimony and Third Party Evidence

Plaintiff was 30 years old at the time of the most recent hearing in

August 2015.  *See* R. 344.  With respect to his educational background,

Plaintiff testified that he attended Santa Fe Community College for about a

year, starting his "prep classes," but he had to stop because of financial

problems.  Plaintiff testified that he had never worked and was living with

his mother.  He helps with the housework such as laundry, washing dishes,

making the bed, sweeping and vacuuming, taking out the trash, and caring

for flower beds.  Plaintiff uses a computer to read things on the internet

and to use Facebook.  He watches the news on television and listens to

music.   Plaintiff is able to shop for groceries and carry packages.  He

attends church twice a week, and visits with friends or relatives once a

week.  Plaintiff does not drive due to his history of seizures.  Plaintiff

testified that he tried to get a cooking job at McDonald's but was told that it

was too much of a risk given his medical history.  He applied for other jobs,

but was unsuccessful.  Plaintiff has difficulty remembering things, but he is

responsible for his own routine in the house.  He required his mother's and

sister's assistance in completing the Social Security paperwork.  R. 344-55.

Plaintiff's sister, Clara Lee Miller, completed a third-party "Function Report" in connection with Plaintiff's claim in February 2010.  R. 130-37. At that time, Plaintiff was attending classes daily at Santa Fe College, traveling to classes with a relative and then using public transportation to commute after class.  She reported that he needs reminders to complete personal grooming, but that he prepares his own meals usually consisting of TV dinners.  She stated that Plaintiff assisted with indoor housework, but no outdoor work due to seizures.  Plaintiff shops for video games, food, and clothing.  He does not pay any bills as he is easily confused.  She listed Plaintiff's hobbies as video games, racing remote control cars, and cooking, activities that he performs daily.  Plaintiff socializes with family and at church and school gatherings on a weekly basis.  Plaintiff gets along with authority figures well and is very respectful.  R. 130-37.

## IV.  Discussion

Plaintiff argues that "there is no medical evidence whatsoever regarding even a scintilla of improvement of [his] childhood organic brain injury."  ECF No. 14 at 17.  He contends that Dr. Abeles' findings reflect

that he still has serious cognitive deficits and that the ALJ's "boilerplate decision" does not address medical improvement.  *Id*.  Plaintiff claims that he was recognized as disabled as a child by reason of meeting Listing 112.02 for children and that subsequently, at age 18, he was again found disabled for meeting the adult listing 12.02.  Plaintiff asserts that "[a]rbitrary and capricious would be a step up from the ALJ's decision in this matter." *Id*. at 19.

Initially, it must be noted that there is no support in the record for Plaintiff's claim that he previously was found to meet child Listing 112.02 or the equivalent adult Listing 12.02.  In connection with the 2003 continuation of benefits decision (the CPD), the examiner completing the psychiatric review technique form did not assess that Plaintiff met or equaled a listing but rather specifically noted that an RFC was necessary. R. 203.  In the CPD, the examiner cited Plaintiff's diagnoses of "organic mental disorder" and "seizure disorder," and noted that Plaintiff was unable to work based on the results of a June 2003 psychological evaluation by Dr. Tozzo-Julian, Ph.D.  R. 54, 185-88.  The CPD does not find that Plaintiff met listing 12.02.  Dr. Tozzo-Julian's report finds that Plaintiff had a cognitive disorder and a seizure disorder, and concluded that Plaintiff

was unable to manage his finances, but makes no findings regarding whether Plaintiff met Listing 12.02.  R. 185-88.

The Court also cannot agree with Plaintiff's assertion that the ALJ's decision does not address medical improvement.  The ALJ expressly found that medical improvement occurred as of May 1, 2010, and then explained the basis for that finding.  The ALJ specifically stated that there had been a decrease in the medical severity of Plaintiff's impairments.   As support for this conclusion, the ALJ first noted that Plaintiff's medical records showed that his seizures appeared to be controlled with the compliant use of medication since the only reported seizure activity occurred when Plaintiff was noncompliant with his medication.  R. 306 (citing Exh. 17F).   Plaintiff has not challenged this finding.

Second, with respect to Plaintiff's cognitive disorder the ALJ pointed to evidence in the record in the form of Plaintiff's own testimony that he had attended a year of community college during the relevant period, evidencing that Plaintiff had developed adaptive functioning and was able to function at a greater level than the testing suggested.  R. 306.

The ALJ's findings regarding improvement in Plaintiff's cognitive disorder are supported by Plaintiff's testimony, which was corroborated by

the third-party evidence provided by his sister.  Plaintiff's testimony that he was able to take college classes and only stopped due to financial reasons supports a finding that he developed adaptive functioning subsequent to the 2003 CPD.  Moreover, the ALJ referenced Dr. Abeles' report, which assessed that while Plaintiff was functioning in the borderline range of intelligence, he could perform "manual labor positions," was competent to manage his money, had a fair prognosis for future success in the workplace, and should be referred for job training.  R. 306, 747.  Thus, while Plaintiff's testing results were similar to earlier testing, Dr. Abeles' narrative report suggests improvement in functional competencies which do not preclude work.

In sum, the Court finds that the ALJ's determination that Plaintiff experienced medical improvement in his impairments as of May 1, 2010, and had the RFC for medium work with the stated limitations, is supported by substantial evidence.

### V. CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that

the decision of the Commissioner terminating Plaintiff's benefits be

**AFFIRMED.**

**DONE AND ORDERED** this 30th day of January 2017.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**